By the Court.—Speir, J.
The portion of the premises alleged to be defective in the title was formerly included in the easterly half of the old post road *508 adjoining the Turtle Bay Farm, and included in subdivision Wo. 6 of the farm belonging to Francis B. Winthrop, and known as the Turtle Bay Farm.
In 1820, the co-heirs of Francis B. Winthrop, excepting William H. Winthrop, executed a deed to the latter, and in the recitals it is stated that the parties to the deed caused the farm to be surveyed and divided by Mr. Randall, a surveyor, into six different farms or subdivisions. This deed was made for the purpose of conveying to the grantee in severalty his proportionate share of the entire farm. The subdivisions were numbered one, two, three, four, five, and six, and William H. Winthrop took Wo. 6, which includes the premises in question. It follows from the declaration in the deed, that the Turtle Bay Farm, without any reservation, had been, by the Randall survey and division, included in the sixth parcel or subdivision. The fact being thus established by the parties themselves furnishes the best evidence of intention.
Moreover, the above conveyance being a friendly partition of the whole farm among the heirs, and the land conveyed, being described not alone by metes and bounds, but also as “subdivision or farm Wo. 6 of the said Turtle Bay Farm,” it may be assumed that the portion of the old post road belonging to the farm, and adjoining Wo. 6, was included in the conveyance. Besides, it is a familiar rule that the grantee of a lot bounded on a street prima facie takes to the centre of the street, and there must be language expressly excluding the street to prevent the grant having this effect. Henry Barclay, by deed dated 1826, became the owner in fee, by boundaries identical in the deed, to William H. Winthrop, and is referred to as being the same premises. This deed, therefore, carries all the interest of the grantors, whatever it may have been, to the centre of the road.
In tracing the title down thus far, there seems to be *509 no controversy, and the plaintiff's counsel, although admitting the effect of the above conveyances, at this point, interposes his objection to the title. His claim is that the deed of 1832, from Barclay to Samuel Thompson did not convey any part of the premises which were formerly within the eastern post road, that the land conveyed is described as being upon the side of the road and the boundary is, limited to the side and along the side, instead of running to the road and along the road.
The importance of examining the foregoing deduction of title and the character of the several transfers is plainly manifest. The intention of the several parties is to be ascertained not only from the language in the description of the deed itself, but must ever have reference to relative extrinsic facts. These facts may consist of co-temporaneous writings, relating to the same subject; by reference in this case to the deeds and circumstances relating to the premises described in them, which brought the title down to Barclay. As a clue to this intention and the import or effect of conveyances, we are permitted to look to the undisturbed use of the right contested, on the one side, and the unqualified acquiescence, on the other, down to the time of the purchase of the premises by the defendant.
When the survey of the Turtle Bay Farm was made, this eastern post road was in public and common use. The intention was to convert the entire Turtle Bay Farm into six holdings in severalty, which should iüelude the entire area of the farm. In this amicable partition Ho. 6 had for a portion of its boundaries this road, and it was impracticable and unusual to place the monuments “K” and “nineteen” elsewhere than on the side of the road ; while it is apparent that the measurement of land extended to the centre. This results from the fact that the division Ho. 6 starts at the most northerly corner of subdivision Ho. 5, which *510 corner is in the centre of the old post road, and then runs to the monumental stone “ K.” It is well-known that in the rural districts it is the custom in the survey of lands to mark courses and distances by artificial monuments, and in case the boundary is made by the highway these monuments are placed on the side of the road between the exterior line enclosing the street and the road-bed, while the quantity of land conveyed extends to the centre. Where, therefore, the road is the limit and boundary the expression is both natural and common “to the side and along the side,” thereby defining in common parlance that portion of the road lying between the exterior limit and the centre.
Intention is further manifest in the description in the deed from Barclay to Thompson, which contains an exception of a certain portion of the land before described which had previously been deeded by Barclay to Grates. The excepted portion is situated on the post road directly north of the land in question, and on the same continuous line with it. Barclay's deed to Grates uses words which carry the land in the road to its centre. As Barclay therefore conveys a parcel of land in the road to Gfates, with the land adjoining thereto, and also in the deed to Thompson conveys a large parcel of land which, in terms, includes land sold to Grates, it seems to follow that Barclay intended to convey to Thompson his right to the land in the road adjacent to the tract in question.
The rules which govern the interpretation of grants of land in the country are- strictly applicable to the present case. This was a public highway at the time, and the -reasons for the construction of the deeds are based upon principles of great public convenience, and do not permit that one should be the owner of a farm and another of a road or stream running through it.
Although the road has been closed for twenty-five years, it does not appear that either Thompson or his *511 representatives have since the date of his deed claimed the right to be in possession of any portion of the land in controversy, and have never made any claim or demand upon any one who has held the same since that time. The question, then, is simply in whom is the fee in the soil vested to which this easement of a public highway was attached ?
The fee must rest somewhere, or be in abeyance. If the views above expressed are correct, it follows that these several conveyances commencing with the partition of the co-heirs of Francis B. Winthrop carries the fee of the premises in dispute to the centre of the road down to the defendants.
An abstract of a decision referred to in the present number of the Albany Law Journal, p. 145, February 26, 1876, in the case of White’s Bank of Buffalo v. Mchols, has just come to my notice. The opinion is by Mr. Justice Allen, of the court of appeals. That experienced and learned judge has so fully and pointedly stated the doctrines relating to boundary upon a highway, construction of grants, &c., that I can not do better than refer to the case as authority. He says: ‘ ‘ Whether a grant of lands bounded by a street, highway, or running stream extends to the centre of such street, highway, or stream, or is limited to the exterior line or margin thereof, depends upon the intent of the parties to the grant as manifest by its terms; and while the presumption is in every case that the grantor does not intend to retain the fee of the soil within the lines of the street or under the water, no particular word or form of expression is necessary to overcome such presumption. It is not sufficient to exclude from the operation of the grant the soil of a highway usque ademedium ftlum that the grant is made with reference to the plan annexed, the measuring or coloring of which would exclude it; or by lines and measurements, which would bring the premises only to the exterior *512 line of the highway; or that they are bounded generally by the line of the highway, or along the highway ; or by any similar expression.”
The judgment should be affirmed with costs.
Sanford, J., concurred.